## Hatch v. The Steam-Boat Boston.

*(District Court, W. D. Pennsylvania. September 17, 1880.)*

1. OVERCROWDING STEAMER—PENALTY—PROSECUTOR—REV. ST. §§ 4465, 4469.—Section 4465 of the Revised Statutes enacts that "it shall not be lawful to take on board of any steamer a greater number of passengers than is stated in the certificate of inspection, and for every violation of this provision the master or owner shall be liable, to any person suing for the same, to forfeit h e amount of passage money and $10 for each passenger beyond the number allowed." Section 4469 of the Revised Statutes further enacts that the penalty imposed by section 4465 "shall be a lien upon the vessel in each case." *Held,* that a suit in admiralty to enforce the lien given by section 4469 need not be prosecuted in the name of the United States.

2. SAME—SAME—ACTION OF DEBT—LIEN.—*Held,* further, that the bringing of an action of debt against the master and owners of the boat, and prosecuting the same to judgment, did not release the statutory lien.

3. SAME—SAME—LIEN—BONA FIDE PURCHASER.—*Held,* further, that such lien was not divested by a sale to a *bona fide* purchaser.

4. SAME—SAME—LACHES.—*Held*, further, that the fact that the libellant did not proceed against the vessel until the recovery of the judgment, in the personal action against the master and owners, did not constitute laches.

5. SAME—SAME—ATTACHMENT.—*Held*, further, that it was not necessary that the vessel should have been attached, before the filing of the libel, to enforce the statutory lien.

6. SAME—SAME—CLERICAL ERROR—JURISDICTION.—*Held*, further, that a mere clerical error in docketing the case would not oust the jurisdiction of the court.

In Admiralty. *Sur* motion to dismiss libel, etc.

*Bartons & Sons*, for steamer Boston and owners.

*H. H. McCormick* and *Wier & Gibson*, for Hatch, libellant.

ACHESON, D. J. Section 4465, U. S. Rev. St., enacts as follows: "It shall not be lawful to take on board of any steamer a greater number of passengers than is stated in the certificate of inspection, and for every violation of this provision the master or owner shall be liable, to any person suing for the same, to forfeit the amount of passage money and $10 for each passenger beyond the number allowed." By section 4469 it is enacted that "the penalties imposed by sections 4465 and 4468 shall be a lien upon the vessel in each case; but a bond may, as provided in other cases, be given to secure the satisfaction of the judgment."

On the seventh of August, 1878, the libellant in this case brought an action of debt, in the United States district court for the western district of Pennsylvania, against Joseph Waltower, master, and Walter B. Harrison and Edward H. Morton, owners, of the steam-boat Boston, to recover penalties, amounting to $1,717, alleged to have been incurred by them on the fourteenth of July, 1878, by reason of a violation of section 4465, upon the occasion of a voyage which the boat made from McKeesport, on the Monongahela river, to Bayyard's oil well, on the Youghiogheny river, in said district. That action was tried before a jury on May 3, 1880, and resulted in a verdict for the plaintiff for the amount of the penalties claimed, and judgment on the verdict was entered May 8, 1880.

Subsequently, on May 13, 1880, the present libel *in rem* was filed against the said steam-boat to enforce, by the condemnation and sale of the boat, the lien created by section 4469. Process having been awarded, the vessel was seized by the marshal, whereupon certain parties, claiming to be the owners of the boat, move the court to dismiss the libel and quash this proceeding.

In support of the motion eleven reasons have been assigned; but they may be reduced to fewer heads, and will be considered in the following order:

1. It is objected that the suit should be prosecuted in the name of the United States. But this proceeding is not to enforce any duties, taxes, penalties, or forfeitures, under section 919 of the Revised Statutes. Section 4465, which imposes the penalties in question, gives them to "any person suing for the same." This plainly implies the right of the private party who proceeds to enforce the penalties to sue therefor in his own name.

2. It is insisted that by bringing an action of debt against the master and owners of the boat, and prosecuting the same to judgment, the vessel was released from the lien of the penalties. The argument proceeds on the idea that a party suing for these penalties is put to his election to pursue one of two remedies, and that by adopting one he abandons the other. But this, it seems to me, is a mistaken view of the case. Section 4465 undoubtedly imposes upon the master and owners a personal liability for the penalties incurred; and it is equally plain that section 4469 makes the penalties a lien against the vessel.

Now, for the recovery of the penalties imposed on the master and owners personally, a common-law action of debt is the appropriate remedy. *Chaffee* v. *U. S.* 18 Wall. 516. The master and owners are certainly entitled to a trial by jury; but the lien against the vessel is to be enforced by a suit *in rem* in the admiralty. *U. S.* v. *The Queen,* 11 Blatchf. 416; Benedict's Adm. §§ 301–2; *The Lewellen,* 4 Biss. 156. These remedies are cumulative, and each is to be pursued in the appropriate forum. *United States* v. *The Queen,*

*supra.* In this last-cited case it was contended that there must be a previous prosecution of the master to recover penalties for importing goods not included in the manifest before a suit *in rem* against the vessel could be instituted. But the court held this was not essential. So here, while it may not have been necessary to pursue the master and owners personally before proceeding against the vessel, the fact that such course was adopted will not, I think, defeat the present suit *in rem.* The penalties have not been paid, and therefore the lien still remains.

3. It is alleged that the claimants of the Boston are *bona fide* purchasers for value, and that they bought the boat from her former owners since the penalties in question were incurred, and without notice thereof. These allegations are not fully admitted, but if the facts be as alleged they afford no ground for dismissing this libel. A lien for a marine tort is not divested by a sale to a *bona fide* purchaser. *The Avon,* 1 Brown's Adm. Rep. 170, 178. It travels with the thing wherever it goes, and into whosesoever hands it may pass. *The Rock Island Bridge,* 6 Wall. 213, 215; *Cutler* v. *Rae,* 7 How. 729.

4. It is further contended that the libellant, not having proceeded originally against the vessel, has been guilty of such laches, as respects the present owners, as should operate as a bar to this suit. But this libel was filed immediately after the violation of the law was established, by the verdict of the jury and judgment of the court, in the personal action against the master and owners. Moreover, by section 1047 of the Revised Statutes, five years from the time "when the penalty or forfeiture accrued" is the limitation for such suits or prosecutions, and this whether the action is *in personam* or *in rem.*

5. Again, it is contended that an attachment or seizure of the steam-boat Boston should have preceded the filing of the libel, and to support this view the court is referred to sections 923, 925, and 926 of the Revised Statutes. But, manifestly, these sections do not apply to the present case. Ordinarily, indeed, in cases of penalties against vessels, a

seizure precedes the commencement of judicial proceedings. *The Lewellen,* 4 Biss. 156, 162; Benedict's Adm. § 301. But I am of opinion that this general rule is not applicable to this case. How a private person, proposing to sue for the penalties imposed by section 4465, could exercise the right of seizure, I am at a loss to see. Nor can I perceive by what authority he could call upon a government official to make such seizure. In a word, I find no statutory provision authorizing a summary seizure of a vessel for a violation of section 4465. What, then, is the remedy to enforce the lien imposed upon the vessel by section 4469? Clearly, as it seems to me, the one here adopted, viz., the ordinary proceeding *in rem,* in the admiralty. Wherever there is a maritime lien it may be enforced in the admiralty. It confers upon its holder such a right in the thing that he may subject it to condemnation and sale to satisfy his claim. *The Rock Island Bridge, supra.* "The lien and the proceeding *in rem* are, therefore, correlative—where one exists the other may be taken." *Id.*

6. Advantage is sought to be taken of a mistake of the clerk in docketing the case on the civil docket of the court, as if it were a common-law action. But this the clerk did of his own motion, without any direction from the proctors of the libellant. This clerical error cannot oust the rightful jurisdiction of this court, sitting in admiralty. An order will be made rectifying the mistake.

The foregoing remarks dispose of all the objections raised which can properly be considered at this stage of the case. Whether or not the verdict and judgment in the action of debt conclude the present owners upon the question of the violation of section 4465, it is not necessary now to consider. For the present it is sufficient to decide that no good reason has been shown for dismissing the libel; and therefore the motion is overruled.

NOTE.—See *Pallock* v. *Steam-Boat Sea Bird, ante,* 573.