### In re GILMAN, SON & CO.

District Court, S. D. New York.
Jan. 5, 1932.

William T. Van Alstyne, of New York City (Leonard P. Smith, of New York City, of counsel) for People's State Bank of West Liberty, Iowa.

Robert P. Levis, of New York City, for Irving Trust Co.

PATTERSON, District Judge.

The trustee in bankruptcy filed objection to the claim of the People's State Bank of West Liberty, Iowa, on the ground that it was barred by the statute of limitations. The referee having held the claim a valid one, the trustee has brought the matter here for review. The case is a test one, as other claimants are in the same situation as the People's State Bank. The facts are undisputed.

██ The claim is on a certificate of indebtedness for $5,174.30, issued by the bankrupt as one of a series totalling $377,582.50. It is dated March 1, 1903, and was to mature on October 16, 1917. Along with the other certificates of the series, it was extended to mature on October 16, 1922. On April 23, 1929, the claimant commenced an action in the New York Supreme Court on the certificate, which is still pending. This suit, of course, arrested any further running of the statute of limitations. The parties are on common

ground in stating that the statute of limitations of New York, Civil Practice Act, § 48 (six years on a debt of this sort), is controlling, and that the claim was already barred when suit was commenced, unless a circular letter and notice sent out by the bankrupt on April 25, 1923, constituted an acknowledgment sufficient to start the statute running anew. Whether or not the circular and notice had this effect is the sole question. Under the law of New York, there must be "an acknowledgment or promise contained in a writing signed by the party to be charged" in order to toll the statute. Civil Practice Act, N. Y. § 59.

In the circular the bankrupt explained that it was advisable to convey all the corporate assets to trustees for the benefit of the certificate holders, and stated that it was calling a meeting of the holders to vote on the proposal. The circular reads:

"April 25th, 1923.
"To the Holders of the Certificates of Indebtedness of Gilman, Son & Co., Inc.

"After unavoidable delays we have perfected the proposed trust deed to carry into effect the terms of our circular of July 20th, 1922.

"We enclose herein a Notice of a meeting of Certificate Holders to be held the 20th of June, 1923, at 11 o'clock A. M., in our office at 55 William Street, New York City, to vote on said proposition.

"We also enclose a Vote in favor thereof which we will thank you to sign and return in the enclosed stamped envelope.

"The proposition is entirely in the interest of the Certificate Holders as the trustees, Messrs. Anthony J. Bleecker and Henry H. Law, only consent to act at our request and without expectation of profit to compensate them for the trouble, care and attention necessary to care for the property transferred.

"That there is a future for the 75 acres which form the chief value of the assets transferred, we are convinced and earnestly desire the Holders of the Certificates to get the benefit of. We have not much hope for the repudiated Southern State bonds and yet there are powerful influences seeking a settlement of this matter which has involved the Congress of the United States in disgrace.

"Among the factors which will benefit the 75 acres in the town site of Palisades, N. Y., is the passage of a bill by the legislature of New Jersey at its session just closed, passed over the Governor's veto, placing the road from Alpine, New Jersey, to the New York State line, in the hands of the New Jersey Highway Department. New Jersey has voted from forty to sixty millions for State highways, which insures the completion of this link in process of time. The Highway Department of New York is ready to complete their Highway system by building down to the New Jersey line whenever that State is prepared to do its part. This would make a direct connection from New York City north to the New York State system of state highways. This places our 75 acres on a line which will have a heavy traffic and gives the best communication to the population of New York seeking homes in the vicinity. A demand for our property at satisfactory prices must result. Additional sales of improved property at Palisades to those referred to in our circular of July 20th, 1922, have taken place since then. We are in confident hopes that the land will finally yield a satisfactory dividend on the Certificates of Indebtedness held by you.

"The Standard Oil Co. have continued the work on their land facing the Hudson River and on their marsh land under water. They are building an extensive system of piers out to deep water. This development must increase in importance and will ultimately bring a population to that vicinity.

"It is for your interest to place this property in a trust which is managed by younger men. Messrs. Bleecker and Law are well acquainted with real estate in the vicinity of New York. They are men of the highest standing in our community and you are fortunate in having the benefit of their experience and ability.

"Awaiting the prompt return of your Vote. We are,
"Respectfully,
"Gilman, Son & Co. Inc.
"By W. S. Gilman,
"Theodore Gilman."

The notice of the meeting, inclosed with the circular, reads:

"Gilman, Son & Co., Inc.
"55 William Street, New York
"Notice of Meeting

"Pursuant to the provisions of the certificate of indebtedness of Gilman, Son & Co., Inc., dated March 1, 1903, Notice is hereby given to the holders of said certificates that a meeting of the holders of said certificates of indebtedness will be held at the office of Gilman, Son & Co., Inc., 55 William Street, Borough of Manhattan, New York City, on the 20th day of June, 1923, at 11 o'clock in

the forenoon or any adjournment thereof for the purpose of voting upon a proposition to consent to the execution by Gilman, Son & Co. Inc., of a trust deed pursuant to the terms of a circular sent to said certificate holders on July 20, 1922, except that the proposed Trustees are to be Messrs. Anthony J. Bleecker and Henry H. Law instead of Mr. William T. Van Alstyne; the object of said proposed trust deed being to convey all the assets of Gilman, Son & Co., Inc., to said Trustees to hold and convert into cash when and as found practicable, for the benefit of said certificate holders, as explained in said circular of July 20, 1922. This notice is given on behalf of, and pursuant to the written request of, the holders of more than 25% of the amount of outstanding certificates of said issue, which request is on file in the office of this Company.

"Dated, April 25th, 1923.

"Gilman, Son & Co., Inc.,

"By Theodore Gilman, Sr.,

"President.

"Theodore Gilman, Jr.,

"Secretary."

I am in agreement with the referee that these two writings embody an acknowledgment of the debt by the bankrupt. It is quite true that statutes of limitation are statutes of repose. Like other statutes, they declare the policy of the state, and must be fairly interpreted and impartially applied by the courts. The debtor's right not to be harassed upon a stale debt is as absolute as the creditor's right to collect on a fresh debt, though in earlier times the courts thought otherwise. Campbell v. Haverhill, 155 U. S. 610, 617, 15 S. Ct. 217, 39 L. Ed. 280; Hayes v. McIntire (C. C.) 45 F. 529, 530; Bloodgood v. Bruen, 8 N. Y. 362, 368. In line with this guiding principle, it is the law that the acknowledgment necessary to start the statute anew must be more than a hint, reference, or discussion of an old debt; it must amount to a clear recognition of the claim as one presently existing. Bell v. Morrison, 1 Pet. 351, 7 L. Ed. 174; Manchester v. Braedner, 107 N. Y. 346, 14 N. E. 405, 1 Am. St. Rep. 829; Connecticut Trust & Safe Deposit Co. v. Wead, 172 N. Y. 497, 65 N. E. 261, 92 Am. St. Rep. 756.

But the circular and notice in this case, both in general tenor and in particular expressions, leave no room for doubt that the debtor was recognizing the debt as one then existing and payable. The debtor urges its creditors to consent to a plan under which there are prospects of payment. "The prop-

osition is entirely in the interest of the Certificate Holders." "That there is a future for the 75 acres which form the chief value of the assets transferred, we are convinced and earnestly desire the Holders of the Certificates to get the benefit of. * * * We are in confident hopes that the land will finally yield a satisfactory dividend on the Certificates of Indebtedness held by you." Short of formally saying, "We acknowledge the debt and promise to pay it as soon as possible," I cannot conceive of anything more plain and unequivocal.

The claim was not barred by limitations. The order of the referee is therefore affirmed, and the claim allowed as a valid one.